IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALABAMA TREATMENT, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 1:17-cv-733-SMD |
| | ) |
| WASTE ALLIANCE, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff's Motion for Entry of Default Judgment (Doc. 54). The Motion asks the Court to grant default judgment as to Count 1 (breach of warranty for a particular purpose), Count 2 (fraudulent misrepresentation of material facts), and Count 3 (suppression of material facts) in the Amended Complaint.[1] *See* (Doc. 54). For the reasons set forth herein, Plaintiff's Motion is due to be granted.

**I.   Introduction**

This case arises from an alleged breach of contract between Plaintiff and Defendants for the purchase of an autoclave suitable for use in Plaintiff's medical sterilization business. The case was originally filed in state court and was removed by Defendants on October 31, 2017.

---

[1] Plaintiff's Amended Complaint contains a fourth cause of action for civil conspiracy. (Doc. 25) at 14. However, Plaintiff does not seek default judgment on this claim; therefore, the undersigned will dismiss the claim.

On May 1, 2018, Plaintiff filed an Amended Complaint against Defendants Waste Alliance, Inc.; Sharps MD of Tampa Bay, LLC; Sharps MD Franchise Group, Inc.; United Autoclaves, Inc.; and Sharps MD of USA, LLC. (Doc. 25). In the Amended Complaint, Plaintiff alleged a breach of warranty claim, a claim for fraud, and a claim that Defendants suppressed material facts pertaining to the purchase of the autoclave. Plaintiff also alleged a claim for civil conspiracy and requested that the Court rescind the contract that was the basis of the claims alleged. *Id*.

Defendants United Autoclaves, Inc. and Sharps MD of USA, LLC were subsequently dismissed without prejudice because Plaintiff failed to serve them within the requisite timeframe set forth in Federal Rule of Civil Procedure 4(m). (Doc. 41). The remaining Defendants, whose counsel were permitted to withdraw based upon their inability to contact their clients, did not answer Plaintiff's Amended Complaint. On August 13, 2019, the Clerk of Court entered default against Defendants Waste Alliance, Inc., Sharps MD Franchise Group, Inc., and Sharps MD of Tampa Bay, LLC. (Doc. 50). Plaintiff now seeks a default judgment against these remaining Defendants, who are no longer represented by counsel. (Doc. 54).

## II.   Findings of Fact[2]

---

[2] These facts are derived from the well-pleaded allegations in Plaintiff's Amended Complaint. *See Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975) (noting that a party's default admits the "well-pleaded allegations of fact" and that a defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law."). *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

On August 21, 2016, Plaintiff received a proposal for an autoclave from Defendant Sharps M.D. It was represented to Plaintiff that Defendant Sharps M.D. had recently purchased United Autoclaves, a former Defendant, which was now manufacturing autoclaves on behalf of Defendant Waste Alliance. Common ownership exists between Defendant Waste Alliance and former Defendant United Autoclaves.

Plaintiff was given a quote of $159,000.00 for the cost of an autoclave. On September 23, 2016, Plaintiff placed a deposit of $15,750.00 toward the purchase of the autoclave with Defendant Waste Alliance. On October 14, 2017, Plaintiff received an email stating that the autoclave was on a truck in Charlotte, North Carolina, and was ready to be shipped to Plaintiff's place of business in Houston County, Alabama, upon receipt of the balance of $128,925.00 minus ten percent that was due upon receipt. Plaintiff wired the balance of the money to Defendant Waste Alliance.

Despite wiring and receiving confirmation of receipt of the money to Defendant Waste Alliance, the autoclave was never received by Plaintiff. Plaintiff contacted Defendant Waste Alliance about the missing autoclave and was told that the autoclave was not shipped because Plaintiff did not wire the balance in time. Plaintiff inquired when it should receive the autoclave and was told "soon."

By December 2016, Plaintiff had yet to receive the autoclave. Plaintiff was told by Defendant Waste Alliance that Plaintiff could expect delivery of the autoclave by the end of January 2017. By March 2017, Plaintiff was not in receipt of the autoclave.

Plaintiff's representative drove to the offices of Defendant Waste Alliance and made inquiries regarding the undelivered autoclave. Gerald Hubble, a representative of

3

Defendant Waste Alliance informed Plaintiff's representative that Defendant Waste Alliance had another autoclave that had been shipped to Defendant Waste Alliance and that Defendant Waste Alliance would send the second autoclave to Plaintiff.

In April 2017, Defendant Waste Alliance shipped the second autoclave to Plaintiff's place of business. Defendant Waste Alliance did not provide technicians to install the second autoclave despite repeatedly making statements to Plaintiff to the contrary.

B & L Cremations ("B & L"), who was tasked to start up an on-site incinerator sold to Plaintiff by Defendant Waste Alliance, informed Plaintiff that B & L would also install and start up the second autoclave sold to Plaintiff by Defendant Waste Alliance. B & L's technician informed Plaintiff that, after inspecting the second autoclave, he found that the second autoclave was not a new autoclave but was nine years old. B & L's technician informed Plaintiff that the autoclave was missing many pieces, including the control panel, which was used to start the second autoclave, as well as piping and pumps needed to operate the autoclave. B & L's technician informed Plaintiff that the second autoclave probably would not work even if those missing pieces were present.

Plaintiff, after learning of the missing control panel, piping, pumps, and other pieces, contacted Defendant Waste Alliance and inquired why the parts were missing. Plaintiff was told that in order to receive the missing parts, Plaintiff would have to pay an additional $14,960.00. Plaintiff informed Defendant Waste Alliance that Plaintiff would send the additional money once Plaintiff was in possession of all the missing parts. Defendant Waste Alliance agreed to send the missing parts but demanded a copy of the check for $14,960.00. Plaintiff sent a copy of the check to Defendant Waste Alliance, who

took the information on Plaintiff's check and attempted to ACH debit Plaintiff's account. Plaintiff's bank blocked the ACH.

When the driver for Defendant Waste Alliance arrived at Plaintiff's place of business to deliver the missing parts, the only missing part in his possession was the control panel. The control panel was missing the touch screen and the necessary software to run it. Plaintiff informed Defendant Waste Alliance that it would like a refund of all the money it paid to Defendant Waste Alliance and offered to pack up the nonfunctioning autoclave and ship it back to Defendant Waste Alliance. Defendant Waste Alliance refused Plaintiff's offer.

### III. Applicable Law

Although the Clerk entered default against Defendants, this does not mean that a default judgment is automatically warranted in favor of Plaintiff. *Nishimatsu Const. Co.,* 515 F.2d at 1206 ("[A] default does not in itself warrant the court in entering a default judgment."); *DIRECTV, Inc. v. Huynh,* 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004). This is so because "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law" when a plaintiff seeks a default judgment. *Nishimatsu Const. Co.,* 515 F.2d at 1206. Instead, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Id.* at 1206. Besides the pleadings, a court may also consider evidence presented in the form of an affidavit or declaration. *See Antoine v. Atlas Turner, Inc.,* 66 F.3d 105, 111 (6th Cir. 1995) ("Use of affidavits in granting default judgments does not violate ... due process[.]").

A sufficient basis for granting default judgment is akin to the standard necessary to survive a motion to dismiss for failure to state a claim. *See Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim."); *Wooten v. McDonald Transit Assocs., Inc.,* 775 F.3d 689, 695 (5th Cir. 2015) (stating in the context of a motion for default judgment, "whether a factual allegation is well-pleaded arguably follows the familiar analysis used to evaluate motions to dismiss under Rule 12(b)(6)"); *United States v. Kahn,* 164 F. App'x 855, 858 (11th Cir. 2006) ("[A] default judgment may not stand on a complaint that fails to state a claim."). When evaluating a motion to dismiss, a court looks to see whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556).

Here, Plaintiff has not provided the Court with a declaration or affidavit along with its Motion for Default Judgment. Therefore, the undersigned will review the well-pleaded factual allegations in Plaintiff's Amended Complaint and the reasonable inferences to be drawn from these allegations to determine whether Plaintiff has stated claims for relief sufficient to grant default judgment.

**IV.    Discussion**

### a. The Well-Pleaded Facts Contained in Plaintiff's Amended Complaint Are Sufficient to Grant Default Judgment for Plaintiff's Breach of Warranty Claim.[3]

Section 7-2-315 of the Alabama Code addresses warranties for a particular purpose. It states:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under Section 7-2-316 an implied warranty that the goods shall be fit for such purpose.

Ala. Code § 7-2-315 (1975). Where there has been no valid modification or exclusion, the warranty will be implied if: (1) the seller has reason to know the buyer's particular purpose; (2) the seller has reason to know that the buyer is relying on the seller's skill or judgment to furnish appropriate goods; and (3) the buyer, in fact, relied upon the seller's skill or judgment. *Donald v. City Nat'l Bank of Dothan,* 329 So. 2d 92, 95 (Ala. 1976) (citation omitted). Thus, in an action for breach of the implied warranty of fitness for a particular purpose, a plaintiff must prove: (1) the existence of the implied warranty; (2) breach of the implied warranty; and (3) damages proximately resulting from that breach. *Barrington Corp. v. Patrick Lumber Co., Inc.,* 447 So. 2d 785, 787 (Ala. Civ. App. 1984).

Here, Plaintiff's Amended Complaint suggests that there was an implied warranty regarding the autoclave. Plaintiff's Amended Complaint states that "Defendant Waste Alliance had reason to know that the Plaintiff's purpose in purchasing the Second Autoclave was to operate it in the sterilization of medical instruments." (Doc. 25) at 8. The

---

[3] Plaintiff's Amended Complaint asserts a claim for breach of warranty against Defendant Waste Alliance and Defendant United Autoclave. (Doc. 25) at 8. Because Defendant United Autoclave has been dismissed, the undersigned will examine the claim as against Defendant Waste Alliance alone.

7

Amended Complaint also alleges that the autoclave ultimately delivered to Plaintiff did not contain a control panel, piping, pumps, and other parts necessary for its operation. Despite affording Defendant Waste Alliance the opportunity to correct this issue, Defendant only delivered a defective control panel and the purchased autoclave still did not work. Therefore, Plaintiff received a broken, incomplete autoclave that was not fit for *any* purpose. Certainly, Plaintiff expected an autoclave that was functional, and Defendant knew as much.

Further, Plaintiff's Amended Complaint states that it "relied upon the skills of Defendant Waste Alliance in designing and manufacturing the Second Autoclave." *Id*. at 8. Defendant's knowledge of Plaintiff's reliance is reasonably inferred from the well-pleaded facts in Plaintiff's Amended Complaint. Specifically, the Amended Complaint notes that Defendant Waste Alliance manufactures autoclaves, and that Defendant Sharps M.D. gave Plaintiff a proposal for the manufacture of an autoclave. *See* (Doc. 25) at 3-4. By proposing a particular autoclave for Plaintiff's business, it is reasonable to infer that Defendant Waste Alliance, as the manufacturer of the autoclave, knew that Plaintiff was relying upon its judgment in manufacturing the appropriate autoclave. Indeed, Plaintiff did not simply walk into Defendant Waste Alliance's place of business and purchase an autoclave from its shelves. Instead, Plaintiff engaged Defendant Waste Alliance to manufacture the appropriate autoclave and received a proposal for such—indicating that Defendant Waste Alliance knew Plaintiff was relying upon its judgment—for the manufacture of an autoclave. Plaintiff accepted the proposal by remitting the appropriate funds—indicating that Plaintiff relied upon Defendant Waste Alliance's judgment in

selecting the autoclave. Therefore, the undersigned finds that an implied warranty existed regarding the sale of the autoclave.

Having determined that an implied warranty existed regarding the sale of the autoclave, the undersigned also finds that Amended Complaint is sufficient to establish a breach of this implied warranty. By delivering Plaintiff a broken, used autoclave that did not work and by further failing to provide essential parts that would cause the used autoclave to function, Defendant Waste Alliance clearly breached the agreement to provide Plaintiff with a newly-manufactured autoclave that would function. Plaintiff suffered damages in at least the amount of the purchase price of the autoclave, along with collateral costs and incidental costs. Accordingly, the undersigned finds that Plaintiff's Amended Complaint states sufficient well-pleaded facts to grant default judgment as to Plaintiff's claim for breach of an implied warranty.

> **b. The Well-Pleaded Facts Contained in Plaintiff's Amended Complaint Are Sufficient to Grant Default Judgment as to Plaintiff's Claim for Misrepresentation of Material Facts.[4]**

To prove fraud based on misrepresentation under Alabama law, a plaintiff must show the existence of a misrepresentation of a material fact, reliance, and that it sustained damages as a proximate result of the misrepresentation. *Sherrin v. Nw. Nat'l Life Ins. Co.*, 2 F.3d 373, 378 (11th Cir. 1993) (citing *Earnest v. Pritchett-Moore,* 401 So. 2d 752, 754 (Ala. 1981)); *AmerUs Life Ins. Co. v. Smith,* 5 So. 3d 1200, 1207 (Ala. 2008). A "material

---

[4] Plaintiff's Amended Complaint asserts a claim for misrepresentation of material facts against Defendant Waste Alliance, Defendant United Autoclave, and "FDB." (Doc. 25) at 10. Because Defendant United Autoclave has been dismissed, and because the Amended Complaint does not identify FDB, the undersigned will examine the claim as against Defendant Waste Alliance alone.

fact" is "a fact of such a nature as to induce action on the part of the complaining party." *Graham v. First Union Nat'l Bank of Ga.*, 18 F. Supp. 2d 1310, 1317 (M.D. Ala. 1998) (citing *Bank of Red Bay v. King,* 482 So. 2d 274 (Ala. 1985)). "Further, the misrepresentation need not be the sole inducement. It is sufficient if it materially contributes and is of such a character that the [complaining] party would not have consummated the contract had he known the falsity of the statement." *Id.* (citation omitted).

In Plaintiff's Motion for Default Judgment, Plaintiff states that "Defendants made false and misleading statements to the Plaintiff in order to induce the Plaintiff to purchase the Second Autoclave." (Doc. 54) at 6. Plaintiff continues: "The unrefuted factual allegations show that the Defendants misrepresented the Second Autoclave as 'new' when in actuality, the Second Autoclave was nothing more than a hodgepodge [of] refurbished parts. Because of the false misrepresentations made by the Defendants to the Plaintiff, the Plaintiff acted by paying money to the Defendants when it otherwise would not have." *Id.*

The reasonable inferences drawn from Plaintiff's Amended Complaint suggest that Defendant Waste Alliance misrepresented material facts to Plaintiff regarding the newness and the functionality of the autoclave. The Court finds that Plaintiff contracted for a newly-manufactured autoclave that worked, not some "hodgepodge" of refurbished, missing, and defective parts. Had Plaintiff known that Defendant Waste Alliance would deliver a used autoclave with missing and defective parts that did not work, Plaintiff would not have consummated the contract by remitting payment to Defendant Waste Alliance. Therefore, the undersigned finds that Defendant Waste Alliance misrepresented material facts to Plaintiff regarding the purchased autoclave, and that Plaintiff relied upon those

misrepresentations in entering the contract with Defendant Waste Alliance. As previously noted, Plaintiff suffered damages in at least the amount of the purchase price of the autoclave, along with collateral costs and incidental costs.

Accordingly, the undersigned finds that Plaintiff's Amended Complaint is sufficient to grant default judgment as to Plaintiff's claim for misrepresentation of a material fact.

### c. The Well-Pleaded Facts Contained in Plaintiff's Amended Complaint Are Sufficient to Grant Default Judgment as to Plaintiff's Claim for Fraudulent Suppression.[5]

Under Alabama law, "[t]he elements of a cause of action for fraudulent suppression are: (1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; [and] (4) action by the plaintiff to his or her injury." *Lambert v. Mail Handlers Benefit Plan,* 682 So. 2d 61, 63 (Ala. 1996). "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Ala. Code § 6-1-102 (1975). One may also recover for fraudulent concealment by showing active concealment of a material fact with an intent to deceive or mislead. § 6-5-103, Alabama Code 1975; *Harrell v. Dodson,* 398 So. 2d 272, 276 (Ala. 1981).

Plaintiff's Amended Complaint states that "Defendant Waste Alliance was and is under a duty to communicate to the Plaintiff that the Second Autoclave was not safe and/or

---

[5] Plaintiff's Amended Complaint asserts a claim for breach of warranty against Defendant Waste Alliance, Defendant United Autoclave, and FDB. (Doc. 25) at 12-13. Because Defendant United Autoclave has been dismissed, and because the Amended Complaint does not identify FDB, the undersigned will examine the claim as against Defendant Waste Alliance alone.

11

capable of water operations, the normal and intended use of the Second Autoclave." *Id*. at 12-13. Combined with Plaintiff's allegation that Defendant Waste Alliance represented the second autoclave as "new," the undersigned finds that the circumstances surrounding this case show that Defendants actively concealed the condition of the autoclave delivered to Plaintiff in order for Plaintiff to remit the funds and accept the used and faulty machine. It is obvious that Defendant Waste Alliance did so with the intent to deceive Plaintiff into thinking it would receive an autoclave fit for its purposes. Plaintiff was injured because of this concealment, not only in the money spent on the faulty autoclave but also the time invested in attempting to secure a functional autoclave for its business. Accordingly, the undersigned finds that Plaintiff's Amended Complaint is sufficient to grant default judgment as to Plaintiff's claim for fraudulent suppression.

## V. Relief Requested

Plaintiff seeks the following relief:

    **a.** actual damages from the Defendants in the amount of $159,000.00;

    **b.** statutory prejudgment interest pursuant to Ala. Code (1975) Section 8-8-1 and Section 8-8-8;
    **c.** punitive damages in an amount to sufficiently deter future conduct of this type;
    **d.** prejudgment and post judgment interest;
    **e.** cost associated with the filing of this action (*see* Exhibit A – E-File Receipt);
    **f.** attorney's fees in the amount of $12,934.00 (see Exhibit B – Attorney Billing Sheet); and
    **g.** such other relief as the Court deems necessary and proper.

(Doc. 54) at 7-8.

Regarding Plaintiff's request for actual damages, the undersigned will award Plaintiff $131,782.50. This amount is based upon the facts alleged in Plaintiff's Amended Complaint. Specifically, Plaintiff alleges that it made a down payment of $15,750.00 for the autoclave. *See* (Doc. 25) at ¶ 13. Plaintiff also alleges that it remitted the balance of $128,925.00 minus ten (10) percent to Defendant Waste Alliance. *Id.* at ¶¶ 14-15. These payments total $131,782.50. The Amended Complaint does not state that Plaintiff ever remitted the remaining ten percent that was due upon receipt of the autoclave. Also, while the Amended Complaint alleges that Plaintiff sent a copy of a check for $14,960.00 to Defendant Waste Alliance for additional parts to fix the second autoclave, it appears that the transaction was blocked by Plaintiff's bank and that payment was never remitted to Defendant Waste Alliance. *Id.* at ¶¶ 34-38. Accordingly, based upon the facts pleaded in Plaintiff's Amended Complaint, Plaintiff suffered $131,782.50 in actual damages.

The undersigned will award Plaintiff $25,172.57 in prejudgment interest pursuant to Ala. Code § 8-8-1. This amount reflects a six (6) percent interest rate applied per annum[6] to the actual damages awarded Plaintiff ($131,782.50) from May 2017 through May 2020. Plaintiff's Amended Complaint alleges that in April 2017, the second autoclave was delivered to Plaintiff. (Doc. 25) at ¶ 24. The Amended Complaint does not state the date on which Plaintiff demanded its money back after discovering that the autoclave did not

---

[6] Under Alabama law, it is well established that prejudgment interest at the default rate of 6% may be available in the breach of contract and fraud context where, as here, damages were reasonably certain at the time of breach. *See Goolesby v. Koch Farms, LLC,* 955 So. 2d 422, 429 (Ala. 2006) ("Prejudgment interest may be available in a breach-of-contract case, . . . but only if damages were reasonably certain at the time of the breach.") (citations omitted); *Rhoden v. Miller,* 495 So. 2d 54, 58 (Ala. 1986) ("Where no written contract controls the interest rate . . . , the legal rate of pre-judgment interest is six percent per annum.").

work and that the additional parts were defective. Therefore, because it is not clear if Plaintiff demanded its money back in April 2017, the undersigned will begin the calculation for prejudgment interest the following month and will continue the calculation through May 2020.

The undersigned declines to award punitive damages, attorney's fees, costs, or any further prejudgment or postjudgment interest.

## VI. Conclusion

For the reasons set forth above, Plaintiff's Motion for Default Judgment (Doc. 54) is GRANTED.

A separate judgment will be entered.

DONE this 17th day of June, 2020.

/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE